**LARA, INC., Plaintiff,**

v.

**SOUTH WHITEHALL TOWNSHIP, Dorney Park Coaster Co., Inc., Charles E. MacKenzie, Steven M. Okun, Elwood M. Bernhard, Ethel F. Lichtenwalner, William T. Ott and Ronnie J. Rice, Defendants.**

**Civ. A. No. 88–8138.**

United States District Court,
E.D. Pennsylvania.

Oct. 27, 1989.

---

Frank S. Poswistilo, Brose and Poswistilo, Easton, Pa., for LARA, Inc.

Thomas H. Dinkelacher, Allentown, Pa., for South Whitehall Tp.

Richard F. Stevens, Allentown, Pa., for Dorney Park Coaster Co., Inc.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Defendants South Whitehall Township, four Township Commissioners and the Township Secretary[1] ("Township defendants") have moved for summary judgment. Plaintiff LARA, Inc. ("LARA") was the operator of stock car and "midget car" races under a license agreement with defendant Dorney Park Coaster Co., Inc. ("Dorney"), the owner of the land upon which the races were held. Pursuant to an agreement between Dorney and the Township defendants, entered into as part of a

---

1. Defendants Charles E. MacKenzie, Steven M. Okun, Elwood M. Bernhard, Ethel F. Lichten-walner, William T. Ott and Ronnie J. Rice.

comprehensive settlement of litigation concerning the payment of the South Whitehall Township's amusement tax, auto racing at Dorney Park was terminated. LARA alleges that the settlement illegally deprived it of liberty and property rights under the due process clause of the fourteenth amendment of the United States Constitution, contrary to 42 U.S.C. § 1983. Jurisdiction is vested in me pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). For the reasons expressed below, I shall deny the Township defendants' motion for summary judgment.

## I.

From 1960 to 1972, LARA's predecessor corporation sponsored automobile races on the one fifth mile racetrack located on Dorney's property in South Whitehall Township. On April 16, 1979, LARA and Dorney executed the third [2] of three agreements relating to the promotion of automobile racing at Dorney Park.[3] Paragraph 15 of the agreement provided as follows: "[t]he Licensor [Dorney] hereby grants to the Licensee [LARA] the option of renewing this License provided that written notice of its intention to do so is given to the Licensor not later than October 15 for each successive year." The agreement further provided for its termination *only* upon the happening of either certain specified events or the breach of a condition contained therein. The record presently before me does not suggest that LARA ever encountered any difficulty from Dorney in renewing its option under this clause or from South Whitehall Township concerning its racing activities. LARA's sole business activity was the races at Dorney Park.

In 1985, Dorney and South Whitehall Township became involved in several lawsuits involving the validity of the Township's amusement tax and the amounts owed by Dorney. Later that year, through negotiations between a representative of Dorney and Township Commissioners MacKenzie and Okun, the parties settled their differences. On December 9, 1985, the parties executed a settlement agreement which in part stated "that all racing at Dorney Park which utilizes motor vehicles with internal combustion engines shall be terminated absolutely as of November 1, 1986...." The settlement agreement further provided that no party could make any public statement regarding the content of the agreement. The settlement agreement was signed by defendant Charles MacKenzie as Chairman of South Whitehall Township, and approved and authorized by the other Township Commissioners. In addition, pursuant to the request of Dorney and the Township, the settlement agreement was filed under seal in the Lehigh County Court of Common Pleas.

Unaware of the settlement agreement, LARA gave written notice to Dorney that it was exercising its option to renew the license agreement for the 1987 racing season on September 8, 1986. Shortly thereafter, Jerome Fried, the President of LARA, met with Dorney executives and was advised that Dorney would not renew the license for the following racing season.[4] At this time, the Dorney executives merely explained that this decision was prompted by a settlement agreement between South Whitehall Township and Dorney. On October 23, 1986, LARA received a letter from Dorney which informed LARA that auto racing at Dorney Park would be terminated

---

2. The two earlier agreements, dated February 9, 1972 and February 11, 1977, were substantially similar to the third agreement. Both prior agreements provided LARA with an annual option to renew which LARA exercised each year in a timely manner.

3. In a suit brought by LARA against South Whitehall Township and Dorney in Pennsylvania state court seeking to enjoin the defendants from terminating auto racing at Dorney Park, the state court denied LARA's request for an injunction and determined that the agreement

between Dorney and LARA was a revocable license. *See LARA, Inc. v. Dorney Park Coaster Co., Inc.,* 116 Pa.Cmwlth. 548, 542 A.2d 220 (1988), appeal den., 559 A.2d 40 (Pa.1989). For the purposes of this motion, I accept this characterization of the agreement.

4. The exact date of this meeting is not known. The affidavit of Jerome Fried contends that it occurred just before October 23, 1986. During his deposition, Fried stated that the meeting may have occurred between the fourth and eleventh of October.

effective November 1, 1986. LARA had already announced, with Dorney's consent, that the 1987 racing season would commence on April 18, 1987.

During the month of November, Fried confronted the Township defendants at public hearings with questions concerning the settlement agreement between the Township and Dorney. The Township Commissioners would not divulge any information concerning the agreement upon the advice of the Township's attorney. Instead, the Commissioners directed Mr. Fried to consult Dorney, because the Township did not "have a voice in it." LARA's efforts to obtain a copy of the settlement agreement were hindered by the order of the Court of Common Pleas placing the agreement under seal. LARA was unable to verify the existence of the settlement agreement or ascertain the reason for the termination of racing at Dorney Park until the publication of an article in the March 6, 1987 edition of The Morning Call.[5]

On October 21, 1988, LARA filed the instant action against the Township defendants and Dorney. The first count of the complaint alleges that the Township deprived LARA of its property and liberty interests in violation of due process of law. The second count claims that Dorney also violated these interests by acting as an agent of the Township defendants. The third count claims that the Township defendants tortiously interfered with the contract between Dorney and LARA. The last count alleges that Dorney's conduct constituted a breach of contract. On May 10, 1989, I denied the Township defendants' motions to dismiss LARA's complaint, except insofar as I dismissed the allegations in Count III as they apply to the defendant South Whitehall Township.

The Township defendants' motion for summary judgment argues as follows: (1) that LARA did not have a liberty or property interest in the continued use of the race track at Dorney Park; (2) that there was no violation of LARA's substantive due process rights because the Township defendants acted in a rational manner in seeking to terminate auto racing at Dorney Park; (3) that the Township defendants lacked any knowledge of LARA's interest in continued auto racing at Dorney Park; and (4) that LARA's claims are barred by the applicable two year statute of limitations.

## II.

Summary judgment is appropriate if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir.1980). The court does not resolve questions of disputed fact, but simply decides whether there is a genuine issue of fact which must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Ettinger v. Johnson*, 556 F.2d 692, 696–97 (3d Cir.1977). The facts must be viewed in the light most favorable to the opposing party, and reasonable doubt as to the existence of a genuine issue of material fact is to be resolved against the moving party. *Continental Insurance Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 252, 106 S.Ct. at 2512.

### A. *LARA's Property Interest*

To establish a claim under § 1983, LARA must demonstrate that the conduct complained of was committed by a person act-

---

**5.** The newspaper successfully petitioned the Court of Common Pleas for release of the settlement agreement.

ing under the color of state law [6] and that the conduct deprived a person of rights, privileges or immunities guaranteed by the Constitution or laws of the United States. *Robb v. Philadelphia,* 733 F.2d 286, 290–91 (3d Cir.1984). The Township defendants argue that "LARA, Inc., as a contractor with Dorney Park Coaster Company, did not have a protectable property interest in continuing to promote races at Dorney Park, inasmuch as its license with Dorney Park Coaster Company was terminable at will," and that LARA "did not have a protected liberty interest." *See* Township Defendants' Motion, ¶¶ 3–4 at 1–2. The Township defendants merely repeat arguments which I rejected in my Memorandum and Order of May 11, 1989. *See* Memorandum and Order, at 6–8. Accordingly, these arguments are without merit substantially for the reasons expressed in my earlier opinion. I previously stated:

> it would appear that LARA held a property right in the agreement with Dorney Park. LARA and its predecessor operated auto races at Dorney Park since 1960, without any apparent interference from the Township.... LARA has alleged facts sufficient to establish a "legitimate claim of entitlement" to renewal of the license.

*Id.* (citations omitted).

In order to determine whether LARA had a constitutionally cognizable property interest in the continued operation of its business, I "must look behind labels, and decide whether plaintiff's license was 'property' in a functional sense[.]" *Reed v. Shorewood Village,* 704 F.2d 943, 948 (7th Cir.1983) (citation omitted). Viewed in this manner, "property is what is securely and durably yours under state ... law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." *Id.*

Property, in the due process sense, has been found in situations where the alleged interest was not property under the relevant state law. *See, e.g., Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (a teacher's tenure contract); *Reed v. Shorewood Village,* 704 F.2d at 943 (a bar operator's interest in a liquor license).

■ I conclude as a matter of law that LARA had a cognizable constitutional property interest in the license agreement with Dorney. LARA and its predecessor company operated its business at Dorney Park since 1960 without any interference from the Township. LARA's license agreement with Dorney was renewed annually as a matter of course. Moreover, the agreement specifically limited the circumstances upon which it could be terminated to certain events, none of which occurred in this case. Therefore, LARA's interest, though perhaps a revocable license within the meaning of Pennsylvania state law, was much more than "meager, transitory, or uncertain." [7]

## B. *Substantive Due Process*

■ "[T]he deliberate and arbitrary use of government power violates an individual's right to substantive due process." *Bello v. Walker,* 840 F.2d 1124, 1129 (3d Cir. 1988).

The Township defendants argue that they had a rational basis for seeking the termination of auto racing at Dorney Park. The affidavit of Township Commissioner MacKenzie claims that the public interest in eliminating the "nuisance" created by the noise of the auto racing provided a rational basis for their decision. However, "the Township actions have no apparent relationship to any legitimate governmental objective related to the amusement tax liti-

---

**6.** The Township defendants do not dispute that the conduct complained of was committed by a person or persons acting under the color of state law. Nor do they argue that the conduct complained of did not constitute an "official policy" of South Whitehall Township. *See Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978).

**7.** Because I conclude that LARA had a property interest in the license agreement with Dorney under the circumstances of this case, I need not reach the question of whether LARA had a liberty interest in conducting races at Dorney Park.

gation." Memorandum and Order of May 10, 1989, at 8. In addition, LARA's opposition to the Township defendants' motion states that the Township could not have eliminated auto racing by other means because it was a permitted non-conforming use within the meaning of Pennsylvania's zoning and land use law. LARA's Memorandum of Law, at 5–14.

Accordingly, I conclude that genuine issues of material fact exist with respect to whether the Township defendants acted in a deliberate and arbitrary manner.

### C. *The Knowledge of the Township Defendants*

■ "[A]n error in judgment, an unforeseeable tragic event, a good faith but misinformed professional decision, or mere negligence will not suffice to impose liability under § 1983." *Estate of Bailey by Oare v. York County*, 768 F.2d 503, 508 (3d Cir.1985).

The Township defendants briefly argue that they lacked any knowledge of the fact that LARA had a license with Dorney to promote auto racing at Dorney Park and that they were entitled to rely upon the approval of the Township Solicitor when including the auto racing termination clause in the settlement agreement with Dorney. Township Defendants' Memorandum of Law, at 20–22. According to the Township defendants, this lack of knowledge on their part and reliance upon the advise of their attorney exonerates them from any liability under § 1983. To support this conclusion, the Township defendants rely solely upon the affidavit of Commissioner MacKenzie which states that neither he, his fellow commissioners nor the Township knew of LARA's agreement with Dorney in 1985.

In opposition, LARA provides documentation which demonstrates that it submitted an application for and received a "Business Privilege License" with South Whitehall Township. This license was re-newed annually. The application for this permit clearly states that LARA would be conducting auto racing at Dorney Park. Furthermore, the Township, in a letter signed by one of the defendants, directly informed LARA that it was exempt from the Township's Admission and Amusement tax because those amounts were collected from Dorney. A copy of this letter was sent to the Township Commissioners. Finally, LARA submitted business privilege tax returns with the Township from 1975 to 1986 which reported an income of approximately $1 million for this period.

I conclude that LARA's opposition to the Township defendants' motion creates genuine issues of material fact with respect to the Township defendants' knowledge of LARA's interest in auto racing at Dorney Park which cannot be resolved on a motion for summary judgment. A reasonable jury could conclude that the Township defendants knew of LARA's racing concern at Dorney Park.[8]

### III.

■ Finally, for the first time, the Township defendants argue that LARA's § 1983 claim is barred by the statute of limitations. Section 1983 actions are governed by the personal injury statute of limitations of the States. *Wilson v. Garcia*, 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985); *see also Bartholomew v. Fischl*, 782 F.2d 1148, 1155 (3d Cir.1986). Pennsylvania has established a two year statute of limitations for actions based upon personal injuries. 42 Pa.Cons.Stat. Ann. § 5524(2) (Purdon 1981).

The Township defendants claim that the statute of limitations should start to run as early as December 9, 1985, the date the settlement agreement between the Township and Dorney was executed. However, they concede that it must be tolled until LARA had an opportunity to discover the existence of the agreement. Consequently, the Township defendants argue that the

---

**8.** I do not decide whether LARA correctly argues that proof that the Township defendants were grossly negligent in overlooking LARA's interest is sufficient to maintain a cause of ac-tion under § 1983. The parties should submit proposed jury instructions on this issue at the time of trial and, if necessary, file supporting memoranda of law.

statute of limitations would begin to run on the date of the meeting in which the Dorney executives informed LARA that auto racing at Dorney Park would be terminated pursuant to an agreement with the Township. The record reflects that this meeting occurred sometime before October 23, 1986, possibly between the fourth and eleventh of October. Therefore, according to the Township defendants, LARA's complaint, filed on October 21, 1988, is barred by the two year statute of limitations.

It is uncontested that on October 23, 1986 Dorney provided written notice to LARA that auto racing at Dorney Park would be terminated "effective November 1, 1986." Moreover, the first race of the upcoming racing season (the first race which LARA was prohibited from holding) was scheduled to occur on April 18, 1987. LARA argues that either November 1, 1986 or April 18, 1987 is the date on which the statute of limitations began to accrue.

LARA also encountered a great deal of resistance when attempting to discover the content of the settlement agreement between Dorney and the Township. In fact, the Township defendants continually denied that the termination of racing at Dorney Park was a matter to be discussed with them; instead, the Township relied upon the secrecy clause of the agreement and referred LARA back to Dorney for an explanation. This effectively denied LARA an opportunity to confirm the existence of the agreement and, more importantly, the actual reason why auto racing was being terminated. LARA argues that this conduct by the Township defendants, whether intentional or unintentional, concealed the events and circumstances underlying the cause of action, and, therefore, tolled the statute of limitations.

A cause of action does not arise until the occurrence of the final significant event necessary to sustain the cause of action. *See Mack Trucks, Inc. v. Bendix–Westinghouse Automotive Air Brake Co.,* 372 F.2d 18 (3d Cir.1966), *cert. denied,* 367 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967). Ordinarily, this event is the time at which the putative plaintiff is injured; however, the plaintiff must have known of his or her injury and its cause. *See Zeleznik v. United States,* 770 F.2d 20, 22–23 (3d Cir.1985), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1513, 89 L.Ed.2d 913 (1986).

When a federal court borrows, as in this case, a State limitations of action period, that State's exceptions are also followed unless the policies underlying the federal cause of action are undermined. *See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 464–65, 95 S.Ct. 1716, 1722–23, 44 L.Ed.2d 295 (1975); *Swietlowich v. Bucks County,* 610 F.2d 1157, 1162 (3d Cir.1979). Under Pennsylvania law, in cases involving fraudulent concealment, the limitations period does not begin to commence until the time of the discovery or the date on which the plaintiff through the use of reasonable diligence should have discovered the cause of action. *Swietlowich,* 610 F.2d at 1162. The fraud involved need not include an intent to deceive potential claimants; unintentional deception will suffice. It is the effect on the plaintiff, not the intent of the defendant, that controls. *Id.* (citing *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 96, 204 A.2d 473, 477 (1964)).

As previously stated, to establish a claim under § 1983 a plaintiff must show: (1) the conduct complained of was committed by a person acting under the color of state law and (2) the conduct deprived the claimant of rights, privileges or immunities guaranteed by the Constitution or the laws of the United States. *See Robb v. Philadelphia,* 733 F.2d at 535. More specifically,

> A plaintiff ... who brings a § 1983 suit based on a violation of the due process clause must allege and prove five things: (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the defendant was acting under the color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

*Sample v. Diecks,* 885 F.2d 1099, 1113 (3d Cir.1989).

LARA alleges that it was deprived of due process of law guaranteed by the Constitution. Therefore, its cause of action would accrue on the date that the conduct, committed by a person acting under the color of state law, depriving it of due process of law occurred. In this case, that would have been on September 5, 1985, if LARA knew of the conduct. Therefore, I reject LARA's arguments that its cause of action did not accrue until November 1, 1986 or April 18, 1987.

 However, it is undisputed that LARA did not learn of the conduct of the Township defendants until more than a year after September 5, 1985. I conclude that genuine issues of material fact exist as to the precise date on which LARA's cause of action did accrue and whether the statute of limitations must be tolled as a result of the subsequent conduct of the Township defendants. First, the exact date of oral notice by Dorney to LARA of the termination of the license agreement is uncertain. The jury will have to determine whether notice occurred before or after October 21, 1986. Second, the jury will consider whether the oral notice was sufficient to apprise LARA of its injury and the cause of the injury, if LARA acted with reasonable diligence. Finally, the jury will determine whether the statute of limitations should be tolled because LARA reasonably relied upon the subsequent alleged misrepresentations of the Township defendants as to their involvement in the termination of auto racing at Dorney Park.

### IV.

For the reasons expressed herein, the Township defendants' motion for summary judgment shall be denied.