James and Karen STOBAUGH, Alan and Laurie Koch, John and Susan Robinson, and Mary Beddingfield, Plaintiffs,

v.

Richard WALLACE, Superintendent of Pittsburgh Public Schools, and the Board of Education of the School District of Pittsburgh, Defendants.

Civ. A. No. 90–168.

United States District Court, W.D. Pennsylvania.

Oct. 19, 1990.

J. Michael Smith, Michael P. Farris, George S. Whitten, Paeonian Springs, Va., Paul Bogdon, Pittsburgh, Pa., for plaintiffs.

James F. Israel, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

LEE, District Judge.

This case arises out of Pennsylvania's home education law, 24 P.S. § 13–1327.1, which was enacted to create uniform statewide rules for home schooling. The plaintiffs filed a federal civil rights action seeking declaratory and injunctive relief, and damages from the deliberate and arbitrary abuse of power by the Superintendent of the Pittsburgh Public Schools in violation of plaintiffs' substantive due process rights.

Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Fed.R. Civ.P., stating that plaintiffs have failed to state a cause of action for deprivation of substantive due process rights under the Fourteenth Amendment of the Constitution of the United States.

## I. FACTS

Plaintiffs are parents of school-aged children who have elected to teach their children at home, pursuant to the Pennsylvania Home Education Program, (HEP), 24 P.S. § 13–1327.1. The HEP was adopted by the Pennsylvania legislature in December, 1988 as an Amendment to the compulsory requirements of the Public School Code. The State Legislature carefully balanced the rights and responsibilities of home educators and required specific filings and steps of accountability which are to be monitored by local school officials.

Defendants are the Board of Education of the School District of Pittsburgh (School District) and Richard Wallace, (Wallace), Superintendent. The Superintendent is charged with the responsibility of insuring that home education students receive an appropriate education under 24 P.S. § 13–1327.1(h).

The HEP requires parents to maintain and submit a portfolio of a child's work. 24 P.S. § 13–1327.1(e)(1).[1] It is within the parents' discretion to include within the portfolio, the results of a standardized achievement test every year. Achievement testing is mandatory, however, in grades three, five and eight.

The School District developed and administers a district-wide achievement testing program called Measuring Achievement in Pittsburgh (MAP). In September of 1989, Wallace advised the plaintiffs that they were required to take all MAP and other standardized tests administered to students attending Pittsburgh Public Schools. The plaintiffs responded by letter, and declined to participate in the MAP testing.

The plaintiffs were again encouraged to participate in the MAP testing by Associate Superintendent Louise Brennen in a letter dated November 28, 1989. Plaintiffs were also reminded of the testing dates.

The plaintiffs did not participate in the MAP testing, and on December 18, 1989, Wallace sent letters to the plaintiffs indicating that he was unable to determine whether plaintiffs' children were learning or achieving at the expected rate, since they chose not to take the MAP tests. Under the guise of 24 P.S. § 13–13.27.1(h),[2] Wallace requested that the plaintiffs submit the portfolio of records and materials which they are required to maintain under the HEP and to forward written evaluations as well.

The plaintiffs contend that no authority is given to the local superintendent to require any testing beyond that which is required by the statute in subsection (e)(1) of § 13–1327.1. Believing that Wallace's requests for portfolios and evaluations were improper and issued only as retaliation for plaintiffs' refusal to succumb to his demand that the children participate in the MAP testing, the plaintiffs initiated this lawsuit.

---

1. Subsection (e)(1) of § 13–1327.1 reads as follows:

   "... The portfolio shall consist of a log made contemporaneously with the instruction which designates by title the reading material used, samples of any writings, work sheets, workbooks or creative materials used or developed by the student and in grades three, five and eight results of nationally normed standardized achievement tests in reading/language arts and mathematics or the results of statewide tests administered in these grade levels. The department shall establish a list, with a minimum of five tests, of nationally normed standardized tests from which the supervisor of the home education program shall select a test to be administered if the supervisor does not choose the statewide test."

2. Subsection (h) of § 13–1327.1 reads as follows:

   "Such documentation required by subsection (e)(1) and (e)(2) shall be provided to the public school district of residence superintendent at the conclusion of each school year. *In addition, if the superintendent has a reasonable belief that, at any time during the school year, appropriate education may not be occurring in the home education program,* he may, by certified mail, return receipt requested, require documentation pertaining to the portfolio of records and materials required by subsection (e)(1) to be submitted to the district within fifteen (15) days; .... If the tests required by subsection (e)(1) have not been administered at the time of the receipt of the certified letter by the supervisor, the supervisor shall submit the test results with the documentation at the conclusion of the school year."

   (Emphasis added).

## II. ANALYSIS

■ In reviewing a motion to dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273 (3d Cir.1985).

■ Plaintiffs must establish two essential elements in their section 1983 claim: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Cohen v. City of Philadelphia*, 736 F.2d 81 (3d Cir.1984). The Court shall focus on the second prong of the test and determine whether plaintiffs were deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.

The Due Process Clause of the Fourteenth Amendment provides; "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." Historically, this guarantee of due process has been applied to deliberate decisions of government officials. This history reflects the traditional and common-sense notion that the Due Process Clause was intended to secure the individual from the arbitrary exercise of the powers of the government. See *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

Plaintiffs allege that Wallace's request for subsection (e)(1) documentation was just such an arbitrary exercise of governmental power. Under subsection (h), Wallace must be provided with the required documentation at the conclusion of each public school year. The statute further allows that Wallace may request the portfolio of records and materials required under subsection (e)(1) if he has a "reasonable" belief that an appropriate education is not occurring in the home education program.

■ In his letter to plaintiffs dated December 18, 1989, and attached to plaintiffs' Complaint, Wallace stated that since the children did not take the MAP tests, he was "unable to determine" whether the children were achieving and learning as they should be and therefore he had a "belief that appropriate education may not be occurring in the home education program." A reasonable belief should be based upon substantive fact and affirmative knowledge, not upon nonoccurrence and presumption.

Without an evidentiary foundation upon which Wallace could base his "belief," Superintendent Wallace was without statutory authority to require that the portfolio of records and materials required by subsection (e)(1) be submitted prior to the conclusion of the school year. Failure to participate in MAP testing, a requirement *not* found in the home education statute, is not determinative of the measure of achievement of the home school program.

■ Though Wallace has arbitrarily chosen to flout state law, every violation of a state statute does not give rise to an infringement of constitutional rights. *Paul v. Davis*, 424 U.S. 693, 700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Plaintiffs undoubtedly have a property and/or liberty interest in the home education of their children which was created by state law. There must be an allegation of deprivation of such property or liberty interest to warrant recognition as a federal constitutional question.

■ Plaintiffs contend that a "stress" has been placed upon their home schooling rights by Wallace's "audit" of their educational activity. There is no constitutional guarantee that one will be free of stress in the exercise of one's rights under state law. No determination has been made that an appropriate education is *not* taking place, nor have the plaintiffs been threatened with the cessation of their rights under the home education statute. The possibility of future injury or invasion of rights

is both remote and speculative in the scenario before this court.

In plaintiffs' words, Wallace has "set in motion the procedure by which the parents' right to home school *may* be revoked. He has maneuvered plaintiffs into a posture of defending their home schooling against a process that *may* lead to the suspension of that right." (Emphasis added) See Paragraph 4.15, Complaint. The complaint does not allege that the plaintiffs' home schooling has been interrupted, and in fact it was conceded at oral argument that plaintiffs have not in fact complied with Wallace's request for the subsection (e)(1) documentation. A far more intrusive burden is required to have actually been thrust upon plaintiffs before § 1983 intervention is warranted.

Plaintiffs have cited *Bello v. Walker*, 840 F.2d 1124 (3rd Cir.1988) and *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398 (9th Cir.1989) as cases which reveal that deliberate and arbitrary abuse of government power violates an individual's right to substantive due process. In *Bello v. Walker*, the plaintiffs challenged the denial of a building permit by a municipal council, while in *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, the plaintiffs challenged the draining of plaintiffs' lake by defendants without due process. Both the above cases demonstrate a legitimate deprivation of a liberty or property interest of a magnitude requiring federal constitutional review. We do not have this in the instant action.

Because the plaintiffs have failed to establish the presence of the threshold requirement of a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States, the defendants' Motion to Dismiss the Plaintiffs' Complaint shall be granted.